## UNITED STATES DISTRICT COURT
## FOR THE
## DISTRICT OF COLUMBIA

| | |
|---|---|
| WILLIAM KAUFFMAN,       ) | |
| ) | |
| *Plaintiff,*    ) | |
| ) | |
| v.      ) | Case No. 1:CV-01104 (RBW) |
| ) | |
| INTERNATIONAL BROTHERHOOD ) | |
| OF TEAMSTERS, AFL-CIO,      ) | |
| ) | |
| *Defendant.*    ) | |
| ) | |
| ) | |
| _____) | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
## DEFENDANT IBT'S MOTION FOR SUMMARY JUDGMENT

The Defendant International Brotherhood of Teamsters, AFL-CIO, submits this memorandum of points and authorities in support of its motion for summary judgment.

## INTRODUCTION

Plaintiff William Kauffman was appointed by IBT General President Ron Carey to the position of international representative in June 1992. (Szymanski Decl. at ¶ 11.) International representatives are appointed directly by the General President and serve on his staff for the purpose of carrying out his policies. (Id. at ¶ 15.)  Mr. Kauffman served under the Parcel and Small Package Division Director until his termination on March 30, 1999. (Kauffman Tr. at 40-41.)

James P. Hoffa was elected as General President of the International Brotherhood of Teamsters in 1999 after a hard-fought political campaign.  He and his transition team did not retain any Carey appointee with whom they were not familiar and could not have confidence would carry out Mr. Hoffa's policies.  Mr. Kauffman, a Carey appointee who served seven years under Carey and his political allies, was therefore terminated along with 125 other IBT employees.  (Szymanski Decl. at ¶¶ 15-16.)

Mr. Kauffman alleges that the IBT discriminated against him on the basis of race and terminated him in violation of federal labor laws.  He has also alleged a pendent local law claim for breach of an implied covenant of good faith and fair dealing.  The IBT is entitled to summary judgment on Mr. Kauffman's federal claims because he has not produced any evidence to show that the legitimate non-discriminatory reason for his termination is pretextual.  With respect to Mr. Kauffman's pendent local law claim, deposition testimony and other record evidence establish that he was an at-will employee, and to the extent that he alleges there were written contracts governing his employment, he has relied on collective bargaining agreements rendering his local law claim preempted by the Labor-Management Relations (Taft-Hartley) Act, 29 U.S.C. § 185 (a) (2000 & Supp. I. 2002).

## ARGUMENT

### I.

### Governing Legal Standard for Summary Judgment Motion

A district court may grant summary judgment only if " 'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'"  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986) (quoting Fed. R. Civ. P. 56(c)).  A

dispute about a material fact "is 'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248.

## II.

## Race Discrimination

The Plaintiff has brought employment discrimination claims against the IBT under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e)-2 (2000 & Supp. I 2002); the Civil Rights Act of 1870, 42 U.S.C. § 1981 (2000 & Supp. I 2002); and the District of Columbia Human Rights Act of 1977, D.C. Code § 2-1401.01-1403.17 (2004). The courts have generally recognized that all three statutes provide substantially similar protection against discriminatory employment practices and require the same analysis. *See* Rap, Inc. v. Dist. of Columbia Comm'n on Human Rights, 485 A. 2d 173, 176 (D.C. 1984) ("this court generally follows the Title VII analysis in discrimination cases brought under . . . [the] Human Rights Act"); Carney v. Am. Univ., 960 F. Supp. 436, 439 (D.D.C. 1997) (same legal standard for retaliation governs both DCHRA claims and Section 1981 suits).

*A.    Plaintiff's District of Columbia Human Rights Claims are Time-barred*

Plaintiff's D.C. Human Rights Act claims for employment actions other than his termination are time-barred. /[1] The statute of limitations for filing a claim under the District of Columbia Human Rights Act is one year, and Plaintiff filed his complaint with the D.C. Human Rights Commission on October 25, 1999. D.C. Code § 2-1403.16 (2004).

---

[1] This Court has already dismissed the Plaintiff's Title VII and 42 U.S.C. §1981 claims for employment actions prior to February 1998 as time-barred. The only employment action that Mr. Kauffman has challenged within the limitations period for Title VII and 42 U.S.C. § 1981 is his termination in March 1999. (Plaintiff's Answers to Interrog. at 5-6 (Ex 7); Kauffman Tr. at 10.)

Plaintiff's termination is the only employment action occurring in this one-year limitation period. All other challenged employment actions occurred prior to October 25, 1998. (Plaintiff's Answers to Interrog. at 5-6 (Ex 7); Kauffman Tr. at 10.)

This Court allowed the Plaintiff to proceed on his time-barred DCHRA claims under a "continuing violation" theory. However, after the IBT filed its motion to dismiss Mr. Kauffman's complaint, the Supreme Court eliminated the continuing violation theory under Title VII. *See* Nat'l R.R. Passenger v. Morgan, 536 U.S. 101, 113 (2002) ("discrete discriminatory acts are not actionable if time-barred, even when they are related to acts alleged in timely filed charges."). Applying Morgan, this Court has held that a continuing violation theory is unavailable under the DCHRA for cases involving discrete discriminatory acts. *See* Coleman v. Potomac Elec. Power Co., 310 F. Supp. 2d 154, 160 (D.D.C. 2004) ("While the local court has not explicitly adopted Morgan to hold that a continuing violation theory is unavailable under the DCHRA for cases involving discrete retaliatory acts, the Court anticipates that it will do so when the occasion arises."). Thus, under the Supreme Court's decision in Morgan, a continuing violation theory is no longer available to save Plaintiff's time-barred claims.

B.      *Plaintiff Has Not Come Forward With Evidence From Which a Reasonable Jury Could Infer That the IBT Discriminated Against Him*

In his amended complaint, the Plaintiff set forth essentially three allegations of employment discrimination. He contends that he was subjected to discriminatory comments, disciplined, and then terminated because of his race. As discussed above, the IBT maintains that all claims other than his termination claim are time-barred. In any event, the IBT is entitled to summary judgment on these claims because the Plaintiff has failed to

produce evidence from which a reasonable jury could conclude that the IBT discriminated against him.

The Supreme Court's opinion in <u>McDonnell Douglas</u> provides the familiar framework for analyzing Title VII claims that are based principally on circumstantial evidence. <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973). <u>McDonnell Douglas</u> governs 42 U.S.C. § 1981 and DCHRA claims as well. *See* <u>Carpenter v. Fannie Mae</u>, 174 F. 3d 231 (D.C. Cir. 1999); <u>Berger v. Iron Workers Reinforced Rodmen Local 201</u>, 843 F. 2d 1395, 1412 n.7 (D.C. Cir. 1998).

Under the <u>McDonnell Douglas</u> standard, the Plaintiff first has the burden of proving, by a preponderance of the evidence, a prima facie case of discrimination. Second, if the Plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." <u>McDonnell Douglas Corp.</u>, 411 U.S. at 802. Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. <u>Id.</u> at 804. The nature of the burden that shifts to the defendant should be understood in light of the plaintiff's ultimate and intermediate burdens. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." <u>Tex. Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 252 (1981).

To establish a prima facie case under the <u>McDonnell Douglas</u> framework, a plaintiff must demonstrate by a preponderance of the evidence (1) that he is a member of a protected

class; (2) he suffered an adverse employment action; and (3) that the unfavorable action gives rise to an inference of discrimination. McDonnell Douglas Corp., 411 U.S. at 802-804. We submit that the Plaintiff cannot meet even this minimal burden.

Mr. Kauffman is a member of a protected class and his termination qualifies as an adverse employment action, so he has satisfied the first two prongs. There is no record evidence, however, to support Mr. Kauffman's claim that the IBT disciplined or demoted him prior to his termination. [2]/ Mr. Kauffman received the same salary as every other international representative, and he admits that the IBT never reduced his base salary. [3]/ (Kauffman Tr. at 26; Szymanski Decl. at ¶ 12.) Mr. Kauffman remained in the position of international representative throughout his tenure with the IBT. (Kauffman Tr. at 11-14. Pl's Admis. at 6 (Ex. 8 ).)

The IBT did remove him from two grievance panels and reassign the work to other international representatives (Kauffman Tr. at 20-21, 24), but this was not a demotion. *See* Mungin v. Katten Muchin & Zavis, 116 F. 3d 1549, 1556-57 (D.C. Cir. 1997) ("Changes in assignments or work-related duties do not ordinarily constitute adverse employment actions if unaccompanied by a decrease in salary or work hour changes.") (internal citations

---

[2] Mr. Kauffman admits that during his tenure with the IBT there were no vacancies that would have constituted a promotion for him. (Kauffman Tr. at 41.) Further, he never applied for any vacant positions (Id), so his claim that the IBT discriminated against him by not granting him a promotion fails.

[3] For a period of time during which he maintained his permanent residence outside the Washington, D.C. area but was assigned to the International Headquarters, Mr. Kauffman received a housing allowance to offset additional living expenses. That housing allowance was terminated in April 1996 after Mr. Kauffman notified the International Union that he moved his permanent residence to Arlington, Virginia. (Szymanski Decl. at ¶ 12; Kauffman Tr. at 10; Pl's Admis. at 4 (Ex 8). )

omitted).  Indeed, Mr. Kauffman admits that he continued to perform many other international representative duties, including serving as a trustee for the UPS 401 (k) pension plan and responding to union member inquiries, until his termination. (Kauffman Tr. at 12-14.)

Mr. Kauffman has not satisfied the third prong of the prima facie test because he has not come forward with evidence giving rise to an inference of discrimination.  In his complaint, Mr. Kauffman alleges that representatives of the IBT made racially-motivated comments toward him. In his deposition, Mr. Kauffman admitted that no employee or representative of the IBT ever used a racial slur or epithet or even made a comment referencing his race.  His allegations can be summarized as follows:

1.  With his housing allowance, Mr. Kauffman made $12,000 more than the other international representatives.  Patricia Callahan, another international representative, found this to be unfair and commented upon it. (Tr. at 31.)  Mr. Kauffman admits that Ms. Callahan did not reference his race or use a racial epithet or slur when she commented upon his compensation. (Tr. at 31.)  An IBT clerical employee and a local union official also made remarks about Mr. Kauffman's level of compensation. (Tr. at 29-31, 36-38.)  Again, neither the clerical employee nor the local union official used racial slurs or epithets or even referenced his race. (Id.)  In any event, the local union official is not an employee or agent of the IBT, so the IBT is not legally responsible for his actions.

2.  Mr. Kauffman also complains that, while he was sitting nearby, Ms. Callahan asked an IBT staff attorney to explain the concept of constructive discharge. (Tr. at 35-36.)  Neither the attorney nor Ms. Callahan used racial slurs, epithets, referenced race, or even referred to Mr. Kauffman in the context of their discussion. (Id.)

3.  In his deposition, Mr. Kauffman alleged that on one occasion he overheard Ms. Callahan and other staff members discussing African-American or Latin-American pool secretaries. (Tr. at 33-34.)  Though he claims that Ms. Callahan or the other staff members said something "inappropriate" about the secretaries, he cannot recall what was said and he has no specific recollection of any racial slur or epithet being used. (Id.)

4.      Finally, he testified that a secretary on occasion referred to the IBT's cook as a "camel-jockey" and to Asians as "cookies" or "fortune cookies." (Tr. at 38-39.) Even assuming this allegation is true, the secretary's allegedly inappropriate comments are not evidence that the IBT discriminated against the Plaintiff as they clearly were not directed at him and were made by a subordinate.

Mr. Kauffman has failed to prove his prima facie case.  None of the comments he complains about referenced his race, nor were they made by a supervisor.  Ms. Callahan was a fellow international representative with no supervisory authority (Kauffman Tr. at 38), and the other persons who made comments that offended Mr. Kauffman were clerical employees or persons not even employed the IBT.  Further, there is no nexus between these comments and Mr. Kauffman's termination.  All of the comments Mr. Kauffman complains about were made years prior to his termination in March of 1999 (Pl.'s Answers to Interrogs. at 5-6 (Ex 7)),   and he has not alleged that any person who participated in the decision to terminate him made any comment to Mr. Kauffman that could in any way support an inference of discrimination.  "Stray remarks/[4] . . . are insufficient to create a triable issue of discrimination where they are unrelated to an employment decision involving the plaintiff." Simms v. United States Gov't Printing Office, 87 F. Supp. 2d 7, 9 (D.D.C. 2000); Waterhouse v. Dist. of Columbia, 124 F. Supp. 2d 1, 12 (D.D.C. 2000) ("Direct evidence does not include stray remarks in the workplace, particularly those made by non-decision makers or statements made by decision makers unrelated to the decisional process itself.").

C.      *Mr. Kauffman Was Terminated Because of the Change in IBT Administrations*

As discussed in Section B, *supra*, Mr. Kauffman has not come forward with evidence sufficient to prove a prima facie case of discrimination and shift the burden to the IBT.  In

---

[4] The comments Mr. Kauffman complains of do not qualify as stray remarks because they did not reference his race.

any event, the IBT is entitled to summary judgment because the record evidence demonstrates that Mr. Kauffman was terminated because of a change in IBT administrations.

James P. Hoffa was elected General President of the IBT and was inaugurated in mid-March of 1999. (Kauffman Tr. at 64.)   Since international representatives are appointed directly by the General President and serve on his staff for the purpose of carrying out his policies, it was important that General President Hoffa have on his staff only those persons in the position of international representative whom he could be confident would effect his policies in the union.  In view of the lengthy and bitter political dispute between Mr. Hoffa and Mr. Carey and his supporters, when Mr. Hoffa's transition team conducted its review of International staff at the time of the changeover in administrations, it decided not to retain any persons appointed by Mr. Carey with whom it was not familiar and could not have confidence would carry out Mr. Hoffa's policies.  Mr. Kauffman was appointed by Mr. Carey in 1992 and served almost seven years as an international representative under his administration and that of his political ally, Mr. Sever.  Mr. Kauffman was not known to Mr. Hoffa or any member of the transition team.  Since the Plaintiff was not known to the transition team, they did not have confidence that he, as a Carey appointee, would carry out Mr. Hoffa's policies.  For this reason only, Mr. Kauffman was not retained following the transition to Mr. Hoffa's administration.  In addition to Mr. Kauffman, approximately 125 other IBT employees were terminated during the transition to Mr. Hoffa's administration. Of that those 125 employees, only a small number were racial minorities with the vast majority Caucasian employees. (Szymanski Decl. at ¶ 15-16.)

As discussed above in Section B, *supra*, Mr. Kauffman has not come forward with evidence from which a reasonable juror could conclude that he was discriminated against. Thus, Mr. Kauffman cannot prove that the IBT's legitimate non-discriminatory reason is pretextual and the IBT is entitled to summary judgment.

## III.

### Labor-Management Reporting and Disclosure Act Claims

The Plaintiff asserts two claims under the Labor Management Reporting and Disclosure Act of 1959, 29 U.S.C. § 401-531 (2000 & Supp. I 2002).  The Plaintiff alleges that he was effectively suspended, then expelled, or otherwise disciplined without service of specific written charges, reasonable time to prepare his defense, or a hearing in violation of § 101 (a)(3) and (4) of the LMRDA. Next, he alleges that he was terminated for failing to make election contributions to the campaign of Ron Carey in violation of § 101 (a)(2), 101(a)(5), and 609.  The Supreme Court's decision in <u>Finnegan v. Leu</u>, 456 U.S. 431 (1981), forecloses Mr. Kauffman's claim that his termination or elimination of his housing allowance constituted union discipline.   With respect to his other LMRDA claim, he has failed to show a nexus between his allegation that he was asked by members of the Carey administration to contribute money to the Carey election campaign in 1996-1997 and his termination by the Hoffa administration in March 1999.

    A.    *Mr. Kauffman's Claim That Elimination of His Housing Allowance or Termination Constituted Union Discipline is Foreclosed by the Supreme Court's Decision in Finnegan v. Leu*

Mr. Kauffman contends that elimination of his housing allowance in 1996 and his termination in 1999 [5]/ constituted union discipline.  It should be noted at the outset, that Mr. Kauffman was a member of Teamsters Local 177, not the IBT.  His membership with Teamsters Local 177 was not impacted by his termination and he continued to be a member of Local 177 until May, 23 2000.  (Kauffman Tr. at 66; Ex. 6.)  In any event, Mr. Kauffman's claims that elimination of his housing allowance or his termination constituted union discipline are foreclosed by the Supreme Court's decision in Finnegan{ TA \s "Finnegan" } v. Leu, 456 U.S. 431 (1981).

In Finnegan, several members of a local union who held non-elected staff positions as business agents were discharged by the local's newly-elected president.  The business agents had been appointed by the incumbent president and had openly supported his unsuccessful re-election campaign.  The Supreme Court rejected the business agents' section 101 (a) and 609 claims, holding that the basic objective of the LMRDA{ TA \s "LMRDA" }, democratic union government responsive to the will of the membership, is served by permitting union leadership to choose staff whose views are compatible with its own. Finnegan, 456 U.S. at 441.

---

[5] Mr. Kauffman alleges that the IBT violated the LMRDA by failing to process a grievance under the UPS National Master Agreement and the Local 177 supplement. A claim against a union for failing to process a meritorious grievance is properly pled as a federal common law claim for breach of the duty of fair representation.  *See* Del Costello v. Int'l Bhd. Teamsters, 462 U.S. 151, 165 (1983).  In any event, the IBT is not a party to the UPS National Master Agreement or the Supplement and has no responsibility for processing grievances under those collective bargaining agreements. (Szymanski Decl. at ¶¶ 4-5.)

In construing that purpose, the Supreme Court further held that sections 101 (a) and 609 were not intended to protect the rights of appointed union staff; rather, the Court held that sections 101 (a) and 609 are intended to protect the rights of union members. Finnegan{ TA \s "Finnegan" } 456 U.S. at 442. ("Congress simply was not concerned with perpetuating appointed union employees in office at the expense of an elected president's freedom to choose his own staff.   Rather, its concerns were with promoting union democracy, and protecting the rights of union members from arbitrary action by the union or its officers.").   An appointed union employee, like Mr. Kauffman, may not use sections 101 and 609 of the LMRDA, which are intended to protect the rights of union members qua members, to bring what is essentially a wrongful termination claim.

     B.     *Mr. Kauffman Has Not Come Forward With Evidence From Which a Reasonable Juror Could Conclude That the Hoffa Administration Terminated Him for Refusing to Contribute Money to the Re-election Campaign of Ron Carey*

Mr. Kauffman alleges that the Hoffa Administration terminated him for refusing to donate money to the re-election campaign of Hoffa's political rival, Ron Carey.  On its face, the allegation is absurd, and no evidence adduced in discovery has cured its absurdity.

Mr. Kauffman alleges that in 1996 Patricia Callahan, a fellow international representative, approached him and told him that he was expected to pledge $1,000 a month to Ron Carey's election campaign. Ms. Callahan had no supervisory authority for Mr. Kauffman.  (Kauffman Tr. at 38.)  Again during the 1996 election, Mr. Kauffman alleges that he was approached by Joe Bales-Henry, another international representative, who handed him a card that had the address of the Carey campaign. Mr. Bales-Henry did not communicate any expectation that Mr. Kauffman contribute money. (Kauffman Tr. at 42-

44.) Finally, Mr. Kauffman alleges that that after Mr. Carey's reelection in 1996, Vice-President Aaron Belk called him and solicited money to pay Mr. Carey's campaign debt. (Kauffman Tr. at 39-43.)

Mr. Kauffman has presented no evidence establishing any connection between the alleged improper election activity of the Carey administration following the 1996 election and the Hoffa administration, who terminated him shortly after Mr. Hoffa assumed office in March of 1999.  Mr. Kauffman has made no allegations of wrongful election conduct by any member of the Hoffa election campaign or transition team  No one associated with the Hoffa election campaign or transition team ever approached Mr. Kauffman to solicit campaign contributions. [6]/  In short, the record is devoid of any evidence of wrongdoing by the Hoffa administration or transition team, the decision makers who terminated Mr. Kauffman.  The IBT is entitled to summary judgment on Mr. Kauffman's LMRDA claims.

C.      *Plaintiff's LMRDA Claims Are Time-Barred*

Congress did not include a statute of limitations period in the Labor-Management Reporting and Disclosure Act of 1959.  The statute of limitations is therefore borrowed from the limitations period for state personal injury actions.  Reed v. United Transp. Union, 488 U.S. 319 (1988). In the District of Columbia, the limitations period for personal injury actions is three years.  Singletary v. Dist. of Columbia, 351 F. 3d 519 (D.C. Cir. 2003).

---

[6] Mr. Kauffman testified that he was approached by two local union officials from Oklahoma and Texas and asked to give his support to James Hoffa for President.  These local union officials never asked Mr. Kauffman to contribute money to the Hoffa Campaign nor were they members of the Hoffa Administration or election campaign.  (Kauffman Tr. at 43-44.)

Mr. Kauffman filed his complaint on May 22, 2001. Thus, events prior to May 22, 1998 are time-barred. All of the alleged illegal solicitation of campaign contributions occurred close in time to the IBT's election for General President in 1996 (Kauffman Tr. at 47-48). [7]/ Mr. Kauffman has not shown any nexus between these time-barred allegations and any event occurring in the limitations period.

## IV.

### The IBT is Entitled to Summary Judgment on Plaintiff's ERISA Claims Because the IBT is Not a Sponsor or Contributing Employer the UPS/Local 177 Pension Plan and Had No Financial Motive to Terminate the Plaintiff

The Plaintiff began working as a package car driver for United Parcel Service, Inc. in 1977. (Kauffman Tr. at 6.) The Plaintiff was a vested participant in Teamsters Local 177/UPS pension plan. (Kauffman Tr. at 7.) The Plaintiff took a union leave of absence from UPS in 1992 to serve as an international representative for the IBT. (Id.) Under the rules of the Local 177 plan only employees actively working for UPS or Teamsters Local 177 are eligible to participate. (Ex. 4.) Thus, UPS ceased making contributions on Mr. Kauffman's behalf when he began working for the IBT in 1992. Mr. Kauffman did participate in the IBT retirement and family protection plan ("IBT family plan"), however. (Kauffman Tr. at 49.)

Mr. Kauffman apparently felt that he should be allowed to participate in two pension plans while he worked for the IBT. Thus, in May 1998 he filed a contract grievance under the UPS National Master Agreement and the Teamsters Local 177 Supplement alleging that UPS had violated these collective bargaining agreements by failing to make pension

---

[7] Likewise, Mr. Kauffman's claim that the elimination of his housing allowance in 1996 constituted improper discipline is also time-barred.

contributions on his behalf while he worked for the IBT. (Kauffman Tr. at 53-54.) Wayne Fernicola, Principal Officer of Local 177, wrote to Mr. Kauffman on July 23, 1998 and informed him that his request for pension credit while on a union leave of absence working for the IBT was a matter solely within the discretion of the Trustees of the Local 177 Plan. (Kauffman Tr. at 55-56; Ex 5.) The matter was therefore not appropriate for the contract grievance procedure but was forwarded to the Trustees of Local 177 plan for their consideration. (Id.)

The Trustees of the Local 177 Plan met and considered the matter. (Kauffman Tr. at 56; Ex. 4.) The Local 177 plan's counsel wrote to Mr. Kauffman and informed him that under the rules of the Plan he was not entitled to pension credit during his employment with the IBT. (Kauffman Tr. at 57-58.) The Local 177 plan's counsel further advised Mr. Kauffman that there was no inconsistency between the collective bargaining agreement and the Plan, but in any event the terms of the Plan would control. (Ex 4.)

In October 1998, Mr. Kauffman wrote a letter to the IBT General Executive Board complaining that Teamsters Local 177 had not processed his grievance for pension contributions. (Kauffman Tr. at 58. ) Mr. Kauffman has brought a claim under § 510 of the Employee Retirement Income Security Act, 29 U.S.C. § 1140 (2000 & Supp. I 2002) alleging that the IBT terminated him for attempting to obtain the status of his rights under the Teamsters Local 177/UPS Pension Plan.

The claim must fail since the IBT has no legal obligation, relationship, or association with the Local 177 Plan. It is not a signatory to the collective bargaining agreements requiring UPS to make contributions to the Local 177 plan on behalf of eligible participants

nor does it have any responsibilities for administering those agreements. (Szymanski Decl. at ¶ 2.) The IBT is not a sponsor or a trustee of the plan. (Kauffman Tr. at 58-59; Szymanski Decl. ¶ at 14.)  The IBT had no legal obligation or responsibility to process the Plaintiff's grievance.

The IBT is entitled to summary judgment because Mr. Kauffman has not come forward with any evidence showing that the IBT was motivated to prevent him from receiving benefits or to save pension or other benefit costs. *See* <u>Phelps v. Field Real Estate Co.</u>, 793 F. Supp. 1535, 1542 (D.D.C. 1991) ("To prove this [ERISA § 510] claim, the plaintiff must show, by a preponderance of the evidence, that his employer was motivated by an intent to interfere with his right to the benefits under the employee benefit plans in which he was a participant.") The Trustees of the Local 177 plan ruled Mr. Kauffman ineligible for benefits, and the IBT had no legal obligation to contribute to the Plan.  Thus, there was no financial or other motive for the IBT to terminate the Plaintiff nor did the IBT realize any cost savings from his termination.  The only ERISA plan under which the IBT was legally required to make contributions was the IBT Family plan.  Mr. Kauffman vested in that Plan and he admits that he received all money he was entitled to under the IBT Family plan. (Kauffman Tr. at 50-51; Szymanski Decl. at ¶ 13.)

Courts have generally applied the <u>McDonnell Douglas</u> paradigm to ERISA § 510 claims.  <u>Phelps</u>, 793 F. Supp. at 1543.  The IBT has come forward with a legitimate non-discriminatory reason for Mr. Kauffman's termination (Szymanski Decl. at ¶¶ 15-17.) and Mr. Kauffman has not produced any evidence from which a reasonable trier of fact could

find that the IBT's reasons are pretextual.  Thus, the IBT is entitled to summary judgment on Mr. Kauffman's ERISA claim.

## V.

### The Plaintiff Was an At-will Employee and His Local Law Claim For Breach of the Covenant of Good Faith and Fair Dealing is Preempted

Though the Plaintiff's claim for breach of the implied covenant of good faith and fair dealing is a pendent local law claim, this Court has the authority to dispose of it on the merits. Considerations of judicial economy weigh in favor of such an exercise of jurisdiction over a pendent local law claim where, as here, all parties have litigated the federal and pendent claims in tandem, the federal and local claims involve the same core set of facts, and the local claims do not pose novel or unique questions of local law. *See, e.g.,* Dimond v. Dist. of Columbia, 792 F. 2d 179, 189 (D.C. Cir. 1986)({ TA \l "*Dimond v. District of Columbia*, 792 F. 2d 179 (D.C. Cir. 1986)" \s "Dimond" \c 1 }dismissing a local law claim on the merits where the local and federal claims had been tried in tandem and the local claim did not pose a novel question of local law).

The Plaintiff's deposition testimony and other record evidence establish that he is an at-will employee, and to extent that he alleges there were written contracts governing his employment, he has relied on collective bargaining agreements, and his local law claim is therefore preempted by the Labor-Management Relations (Taft-Hartley) Act, 29 U.S.C. § 185 (a).

Mr. Kauffman testified that his employment with the IBT was not for a specified period. (Kauffman Tr. at 28.) Under District of Columbia law, an employment contract that does not clearly express a specific duration is presumed to be terminable at will by either

party. <u>Jankins v. TDC Mgmt. Corp.</u>, 21 F. 3d 436, 443 (D.C. Cir. 1993). Mr. Kauffman's

admission that his employment was not for a specified term establishes indisputably that he

is an at-will employee even if the Court gives credence to Mr. Kauffman's allegation that an

IBT Vice-President informed him that his employment would be permanent (Tr. at 28.).[8]/

The presumption of at-will employment operates even if the parties speak of employment as

permanent. <u>Jankins</u>, 21 F. 3d at 443. Further, Mr. Kauffman admits that his employment is

controlled by the IBT Constitution (Pls. Answers Interrogs. at 4 (Ex 7)), which provides in

unequivocal terms that all International Representatives serve at the pleasure of the IBT

General President: "The General President, when he deems it for the best interests of the

International Union, is hereby empowered to remove any International Representative. . ."

(Szymanski Decl. at ¶¶ 9-10, Ex. 1 at 36-37. )

The IBT is therefore entitled to summary judgment on Mr. Kauffman's remaining

local tort claim since the District of Columbia does not recognize a claim for breach of an

implied covenant of good faith and fair dealing for at-will employees. <u>Kerrigan v. Britches

of Georgetowne, Inc.</u>, 705 A. 2d 624 (D.C. 1997).**{** TA \l "*Kerrigan v. Britches of Georgetowne,

Inc.,* 705 A. 2d 624 (D.C. 1997)" \s "Kerrigan v. Britches of Georgetowne, Inc., 705 A. 2d

624 (D.C. 1997)" \c 1 **}**

To the extent that Mr. Kauffman contends his employment is controlled by other

written documents, he has relied on collective bargaining agreements and his local law claim

is preempted.  Mr. Kauffman relies on a variety of collective bargaining documents: 1) The

---

[8] Mr. Kauffman's allegation that he was assured of permanent employment is hardly credible
in light of the IBT Constitution, which clearly provides that an international representative
can be removed at the will of the General President.

UPS National Master Agreement, 2) the Supplement to the National Master Agreement between Teamsters Local 177 and UPS, Inc. ("Supplement"), 3) a contract grievance that he filed under the Supplement, and 4) a letter notifying UPS, Inc. that the Plaintiff was exercising his rights under the Supplement to take a union leave of absence from UPS, Inc. (Pls. Answers Interrog. at 4 (Ex 7).)

In <u>Allis-Chalmers Corp. v. Lueck</u>, 471 U.S. 202, 217 (1985), the Supreme Court considered under what circumstances a state tort claim for breach of an implied covenant of good faith and fair dealing would be preempted by Section 301 (a) of the Labor-Management Relations Act, 29 U.S.C. § 185 (a).  The Supreme Court found that the claim for breach of an implied covenant of good faith and fair dealing was nothing more "than a way to plead a certain kind of contract violation in tort in order to recover exemplary damages."  Therefore, a claim for breach of an implied covenant of good faith in a collective bargaining agreement is preempted because the court will inevitably have to interpret the agreement.  <u>Id.</u> ("Because the right asserted not only derives from the contract, but is defined by the contractual obligation of good faith, any attempt to assess liability here inevitably will involve contract interpretation. . .")  *See also* <u>Lingle v. Norge Div. of Magic Chef, Inc.</u>, 486 U.S. 399, 413 (1988) ("an application of state law is preempted by § 301 of the Labor Management Relations Act of 1947 only if such application requires the interpretation of a collective-bargaining agreement.").

Finally, Mr. Kauffman cannot make out a claim for breach of an implied covenant and good faith and fair dealing against the IBT because the IBT is not a party to any of the collective bargaining agreements Mr. Kauffman alleges controlled his employment.  The IBT

is not a party or a signatory to the UPS National Master Agreement and has no legal obligation for its administration. (Szymanski Decl. at ¶ 4.)  Instead, the agreement is between UPS, Inc. and various Teamster local unions, who are represented by the Teamsters United Parcel Service National Negotiating Committee.  (Szymanski Decl. at ¶ 4.)

In sum, the IBT is entitled to summary judgment on Mr. Kauffman's local law claim for breach of the implied covenant of good faith and fair dealing because he was an at-will employee, his claim is preempted, and the IBT is not a party to any of the collective bargaining agreements Mr. Kauffman alleges controlled his employment.

## **CONCLUSION**

For the foregoing reasons, the IBT respectfully requests that its motion for summary judgment be granted.


December 17, 2004                         Respectfully submitted,


                                         /s/William R. Wilder
                                         William R. Wilder  (D.C. Bar No. 450083)
                                         email: wwilder@bapwild.com
                                         Katherine A. McDonough (D.C. Bar No. 476642)
                                         email:  kmcdonough@bapwild.com
                                         BAPTISTE & WILDER, P.C.
                                         1150 Connecticut Avenue, N.W.
                                         Suite 500
                                         Washington, D.C. 20036
                                         202-223-0723
                                         202-223-9677 (facsimile)


                                         Counsel for the International Brotherhood of Teamsters