UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WILLIAM L. KAUFFMAN,  )<br>  )<br>Plaintiff,  )<br>  )<br>v.  )<br>  )<br>INTERNATIONAL BROTHERHOOD  )<br>OF TEAMSTERS,  )<br>  )<br>Defendant.  )<br>  ) | Case No. 01-CV-01104 (RBW) |

## DECLARATION OF PATRICK J. SZYMANSKI

Patrick J. Szymanski does hereby declare and state:

1. I am General Counsel for the International Brotherhood of Teamsters and have served in that position since March 1999. I am familiar with the Constitution of the International Brotherhood of Teamsters. A true and accurate copy of relevant excerpts of the International Constitution is attached to my declaration as Exhibit 1. In addition, I participated in the transition team which assisted IBT General President James Hoffa during the transition of administrations from that of Acting General President Thomas Sever in March 1999.

2. The IBT consists of an International Union headquartered in Washington, D.C. and approximately 485 affiliated local unions throughout the

United States representing employees in numerous industries. The leadership of the International Union includes the General President, General Secretary-Treasurer and the General Executive Board, which includes the General President, General Secretary-Treasurer, international vice-presidents representing the four U.S. regions of the International Union (Eastern, Southern, Central and Western) as well as Teamsters Canada and five at-large international vice-presidents. All of these international officers are elected directly by the membership of the IBT.

3.   In addition to administrative departments such as Communications, Research and Government Affairs, the International Union maintains Divisions for the various industries in which members of its local unions work, including the Parcel and Small Package Division. The divisions assist local unions in the negotiation and administration of collective bargaining agreements. The divisions are staffed by directors and international representatives appointed by the General President.

4.   The Parcel and Small Package Division is responsible for assisting local unions that represent employees in the overnight and parcel delivery industry such as United Parcel Service. It does not administer the UPS National Master Agreement. Its services are limited to the assistance of Local Unions in their administration of that agreement and any supplemental agreement to which a local union may be a party. The Division does not administer grievances by UPS

employees. Grievances are handled by local unions only. Division personnel serve only on the committees that decide grievances presented by local unions. Accordingly, the local unions are the exclusive representatives for the UPS employees in their jurisdictions, rather than the IBT.

5.   The IBT General President has general supervisory authority over the affairs of the International Union pursuant to Article VI, Section 1(b) of the International Constitution. Exh. 1, p. 39.

6.   Under Article V, Section 1(d) of the International Constitution the General President appoints international representatives and is empowered to establish salaries for international representatives subject to the approval of the union's General Executive Board. Exh. 1, p. 36.

7.   Article V, Section 1(e) of the constitution establishes the per diem, travel allowances and auto allowances for international representatives. Exh. 1, pp. 36-37.

8.   Under Article V, Section 1(g), the General President has power to establish the conditions of employment and fringe benefits for international representatives, subject to GEB approval. Exh. 1, pp. 37-38.

9.   The General President may remove any international representative when he deems it in the best interest of the International Union pursuant to Article VI, Section 6 of the international constitution. Exh. 1, p. 48.

10. Accordingly, all international representatives serve at the pleasure of the General President and are considered "at-will" employees. They serve as part of his staff and are responsible for carrying out the policies established by the General President in the various divisions of the International Union. International representatives do not have employment contracts with the IBT.

11. IBT personnel records reflect that Plaintiff Kauffman was a member of Teamsters Local Union No. 177 in Newark, N.J. and was appointed by former IBT General President Ron Carey to the position of international representative in June 1992. He served under the Parcel and Small Package Division Director. No other supervisory position existed in the Small Package Division during Mr. Kauffman's employment other than Director.

12. IBT records also reflect that Mr. Kauffman was paid the same salary as other international representatives, $62,500.00. For a period of time during which he maintained his permanent residence outside the Washington, D.C. area but was assigned to the International Headquarters, Mr. Kauffman received a housing allowance to offset additional living expenses. That housing allowance was terminated in April 1996 after Mr. Kauffman notified the International Union that he moved his permanent residence to Arlington, VA. *See* Exhibit 2 attached. Since Mr. Kauffman no longer maintained his residence outside the Washington, D.C. area, he was no longer eligible for a housing allowance and the IBT notified

him that it was terminating the allowance effective April 1996. *See* Exhibit 3 attached.

13. Finally, IBT records reflect Mr. Kauffman was a vested participant in the IBT Retirement and Family Protection Plan ("the Family Plan"). He vested in the plan in 1995, three years after the start of his employment. The IBT made contributions to the Family Plan on his behalf throughout the period of his IBT employment.

14. The IBT is not a sponsor of the Local 177/UPS Pension Plan and is not a contributing employer to that plan.

15. Since international representatives are appointed directly by the General President and serve on his staff for the purpose of carrying out his policies, it was important that General President Hoffa have on his staff only those persons in the position of international representative whom he could be confident would effect his policies in the union. In view of the lengthy and bitter political dispute between Mr. Hoffa and Mr. Carey and his supporters, when Mr. Hoffa's transition team conducted its review of International staff at the time of the changeover in administrations it decided not to retain any persons appointed by Mr. Carey with whom it was not familiar and could not have confidence would carry out Mr. Hoffa's policies.

- 6 -

16. Mr. Kauffman was appointed by Mr. Carey in 1992 and served almost seven years as an international representative under his administration and that of his political ally, Mr. Sever. Mr. Kauffman was not known to Mr. Hoffa or any member of the transition team. Since the Plaintiff was not known to us, we did not have confidence that he, as a Carey appointee, would carry out Mr. Hoffa's policies. For this reason only, Mr. Kauffman was not retained following the transition to Mr. Hoffa's administration. There was no invidious discriminatory reason for Mr. Kauffman's termination.

17. In addition to Mr. Kauffman, approximately 125 other IBT employees were terminated during the transition to Mr. Hoffa's administration. Of that number, only a small number were racial minorities with the vast majority Caucasian employees.

I have read the foregoing declaration and, under penalty of perjury pursuant to 28 U.S.C. § 1746, hereby declare that it is true and correct.

*[signature]*
Patrick J. Szymanski